BRYAN CAVE LLP, #145700
Sean K. McElenney, 016987
Gregory B. Iannelli, 026549
Two N. Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone:   (602) 364-7000
Fax:            (602) 364-7070
E-Mail:   skmcelenney@bryancave.com
              gregory.iannelli@bryancave.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fender Musical Instruments Corporation, | No. _____ |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| Umerco Clothing Inc. dba Dragonfly Clothing; American Garmento Inc.; Edward Kotab; Talal Kotab; and Foizie Kotab, | |
| Defendants. | |

For its Complaint against Defendants Umerco Clothing Inc. dba Dragonfly Clothing, American Garmento Inc., Edward Kotab, Talal Kotab, and Foizie Kotab, Plaintiff Fender Musical Instruments Corporation alleges as follows.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Fender Musical Instruments Corporation ("Fender") is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Scottsdale, Maricopa County, Arizona.

2.     Defendant Umerco Clothing Inc. dba Dragonfly Clothing ("Dragonfly") is a corporation incorporated under the laws of the State of California, with its principal place of business in Anaheim, Orange County, California.

3.     Defendant American Garmento Inc. ("Garmento") is a corporation incorporated under the laws of the State of California, with its principal place of business in Anaheim, Orange County, California.

4.     Defendant Edward Kotab is a natural person and resident of Anaheim, Orange County, California.

5.     Defendant Talal Kotab is a natural person and resident of Anaheim, Orange County, California.

6.     Defendant Foizie Kotab is a natural person and resident of Anaheim, Orange County, California.

7.     The actions and omissions of Talal Kotab and Foizie Kotab described in this Complaint were undertaken for the benefit of their marital community.

8.     Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331 because this is an action involving and/or arising out of federal patents, copyrights or trademarks, 28 U.S.C. § 1338.

9.     Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states, and because the amount in controversy exceeds $75,000.

10.     Venue exists in this Court by agreement of the parties and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

### Fender And Its Marks

11.     Plaintiff Fender is the world's leading manufacturer of certain musical instruments, namely guitars, basses, amplifiers, and related equipment. With an illustrious history dating back to 1946, Fender has touched and transformed music worldwide and in nearly every genre: rock 'n roll, country and western, jazz, rhythm and blues, and many others. A wide range of musicians, from beginners and hobbyists to the world's most acclaimed artists and performers, have used Fender instruments. Fender was founded in Fullerton, California by legendary inventor Clarence "Leo" Fender, an electronics innovator, who realized that he could improve on the amplified hollow-body instruments

BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ  85004-4406
Telephone:    (602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:   (602) 364-7000

of the day by using an innovative solid-body electric guitar design.  He further realized that he could streamline the process of building them.

12.      In 1951, Leo Fender introduced a prototype solid-body instrument that would eventually be called the Telecaster® guitar.  The "Tele"® guitar, as it was and is often referred to, was the first solid-body Spanish-style electric guitar to be commercially mass-produced.  The Telecaster® guitar, initially widely used among country and western players, is truly iconic among musical instruments and has become one of the most popular electric guitars in history.

13.      Fender first introduced its Stratocaster® guitar in 1954, incorporating design innovations based on feedback from professional musicians.  No one could have foreseen then how the "Strat"® guitar, as it was and is often referred to, would go on to revolutionize popular music.  In 1957, Buddy Holly appeared on the "Ed Sullivan Show" playing his maple-neck Strat® guitar, and the guitar (like Holly) became a music sensation.  Just a few years later, John Lennon and George Harrison of the Beatles, the Beach Boys, and many other musicians used their Fender Stratocaster® guitars while recording some of the most popular music of the 1960s.  The immensely popular guitar received yet another enormous profile (and sales) boost when Jimi Hendrix gained renown as a loyal Strat® guitar player.  Indeed, in 1990, the Stratocaster® guitar used by Hendrix at the Woodstock Music Festival in 1969 sold at auction by Sotheby's for $270,000 -- a record price at that time.  In 2004, Eric Clapton's famous "Blackie" Stratocaster® guitar sold for a new record price of $959,500.  Essentially unchanged since its 1954 debut, the Stratocaster® guitar is quite simply the best selling and most popular and influential electric guitar ever made, and players at all levels and in all genres continue to rely on its sound, playability and versatility to this day.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

14.    The legendary Fender Telecaster® guitars and Stratocaster® guitars are universally acclaimed as design classics.  Together with the revolutionary Fender Precision Bass® guitar and Jazz Bass® guitar, these two historic instruments laid the foundation for a new kind of musical group and a revolution in popular music—what we know today as the modern rock band.  As opposed to the "big bands" of an earlier era, the Telecaster® guitars, Precision Bass® guitars, Jazz Bass® guitars, and Stratocaster® guitars, when played through their Fender® amplifiers, made it possible for smaller groups of musicians to get together and be heard.  Based on their overwhelming popularity with novices and professionals alike, Fender electric guitars and amplifiers are, and have been, the best-selling and market-share leader in the musical instruments industry in the United States.  Even a *partial* roster of Fender Telecaster®  guitar and Stratocaster® guitar players alone includes the names of many of the most famous musicians of the past sixty years:  Eric Clapton, Jeff Beck, Jimi Hendrix, Dick Dale, Buddy Guy, Merle Haggard, Stevie Ray Vaughan, Jimmy Page, John Lennon, George Harrison, Yngwie Malmsteen, Robert Cray, Bruce Springsteen, Buddy Holly, Mark Knopfler, David Gilmour, Bonnie Raitt, James Burton, Chrissie Hynde, The Beach Boys, Bob Dylan, Buck Owens, Brad Paisley, Vince Gill, The Edge, Keith Richards, Joe Strummer, Pete Townshend, John Mayer, Marty Stuart, Keith Urban, Muddy Waters, Johnny Marr, Kurt Cobain, and Bruno Mars.

15.    Based on the success and popularity of Fender's musical instruments, Fender, and/or its authorized licensees, has used a variety of its trademarks and trade dress on or in connection with products other than musical instruments, including, but not limited to apparel, jewelry, leather goods, automobile audio products, video games, and other lifestyle products.

16.    Fender, and its predecessors in interest, have long used a variety of trademarks and trade dress in connection with its products to better identify the source and quality of those products.  To protect the goodwill associated with those products, Fender owns, *inter alia*, the trademarks FENDER®, STRATOCASTER®, TELECASTER®, PRECISION BASS®, JAZZ BASS®, THE SPIRIT OF ROCK-N-ROLL™, the Fender

"Spagh *Fender* " design mark ( *Fender* ®) and the Fender "Transition Logo" design mark ( ®), as well as the distinctive shapes of the headstocks that Fender commonly uses on its electric guitar products, including the Stratocaster® guitar, Telecaster® guitar, Precision Bass® guitar, and Jazz Bass® guitar and related products, which it uses in connection with the sale of its products in interstate and foreign commerce.

17.    More specifically, in addition to Fender's extensive common law rights, and given the importance of and value to Fender of its trademarks and goodwill, Fender owns, *inter alia*, the following trademark registrations issued by the United States Patent and Trademark Office ("USPTO"), for many varieties of goods, including without limitation musical instruments, accessories, and apparel:

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
| FENDER (IC 015) | 805,075 | 3/8/1966 | Musical Instruments, namely, electric Spanish guitars, electric basses, acoustic guitars, and components and accessories for guitars and the like, namely, cases, bags, strings, polish, picks, necks, heads, pickups, pickup covers, pickguards, bridge covers, tremolo handles, control knobs, and straps. | 1946 (SECT 8&15) |

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
| FENDER (IC 009) | 805,075 | 3/8/1966 | Electric apparatus for use with guitars and for other purposes--namely, amplifiers, loudspeakers, and components and accessories for such electrical apparatus-- namely, amplifier cords, amplifier covers, foot pedal controls, amplifier handles, amplifier knobs, amplifier corners, amplifier volume and tone controls, speaker cabinets, and amplifier legs | 1946 (SECT 8&15) |
| FENDER (IC 025) | 3,060,024 | 02/21/2006 | Clothing, namely belts, hats, infantwear, jackets, pants, shirts, sleepwear, sweaters, tops, undergarments and wristbands | 1983 (SECT 8&15) |

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE: (602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE  SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:   (602) 364-7000

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
| *Fender*<br>(IC 015) | 805,510 | 3/15/1966 | Musical Instruments, namely, electric Spanish guitars, electric basses, acoustic guitars, and components and accessories for guitars and the like, namely, cases, bags, strings, polish, picks, necks, heads, pickups, pickup covers, pickguards, bridge covers, tremolo handles, control knobs, and straps. | 1946 (SECT 8&15) |
| *Fender*<br>(IC 009) | 805,510 | 3/15/1966 | Electrical apparatus for use with guitars and for other purposes - namely, amplifiers, loudspeakers, and components and accessories for such electrical apparatus - namely, amplifier cords, amplifier covers, foot pedal controls, amplifier handles, amplifier knobs, amplifier corners, amplifier volume and tone controls, speaker cabinets, and amplifier legs | 1946 (SECT 8&15) |
| *Fender*<br>(IC 025) | 1,715,905 | 09/15/1992 | Men's and women's active clothing; namely, T-shirts, tank tops, sweaters, fleece tops, jackets, polo shirts, hats | 1983 (SECT 8&15) |

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
| *Fender* (IC 018) | 2,385,810 | 09/12/2000 | backpacks, knapsacks, luggage, and carry-on bags | 12/22/1999 (SECT 8&15) |
| *Fender* (IC 025) | 2,237,850 | 04/06/1999 | coats and shirts | 1987 (SECT 8&15) |
| *Fender* (IC 015) | 1,256,824 | 11/8/1983 | Electric guitars and electric bass guitars | 1/1/1981 (SECT 8&15) |
| STRATOCASTER (IC 015) | 839,997 | 12/5/1967 | Electric guitars | 1954 (SECT 8&15) |
| TELECASTER (IC 015) | 871,794 | 6/24/1969 | Guitars | 1949 (SECT 8&15) |
| JAZZ BASS (IC 015) | 882,884 | 12/23/1969 | Bass guitars | 1957 (SECT 8&15) |
| PRECISION BASS (IC 015) | 884,159 | 01/13/1990 | Bass guitars | 1954 (SECT 8&15) |

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
| THE SPIRIT OF ROCK-N-ROLL (IC 009,015 and 025) | 2,774,155 | 10/14/2003 | 9   Amplifiers for musical instruments and parts and accessories for use in connection therewith 15   Acoustic guitars, electric guitars and parts and accessories for use in connection therewith 25   Clothing, namely, t-shirts, sweatshirts and hats | 5/31/2003 (SECT 8&15) |
| (IC 015) | 1,148,869 | 3/24/1981 | Electric guitars | 1955 (SECT 8&15) |
| (IC 015) | 1,148,870 | 3/24/1981 | Electric guitars | 1951 (SECT 8&15) |
| (IC 015) | 2,163,733 | 6/9/1998 | Electric guitars and electric bass guitars, and necks for electric guitars and electric bass guitars | 1955 (SECT 8&15) |

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

| Trademark | Reg. No. | Reg. Date | Goods | Date of First Use in Commerce |
|---|---|---|---|---|
|  (IC 009,014,016,018, 025 and 026) | 3,488,511 | 08/19/2008 | 9    Neon signs<br>14    Timepieces; jewelry<br>16    Calendars; greeting cards; stickers; posters<br>18    Wallets<br>25    T-shirts; shirts; jeans; headwear; footwear; belts<br>26    Belt buckles | 1987 |

(Copies of the trademark registration certificates for each of these registrations are attached as Exhibit A.)

18.    Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065 with regard to certain of the foregoing trademark registrations as indicated above, and each such registration is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serves as conclusive evidence of Fender's ownership of the respective marks and of its exclusive rights to use the respective mark in commerce on or in connection with the goods identified in those registrations under Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

19.    Fender's trademarks and trade dress as referenced in Paragraphs 15 through 17, and their common law equivalents, are collectively referred to as the "FENDER Marks."

20.    Since Fender's first use in commerce of each of the FENDER Marks, the products sold under the FENDER Marks have been continuously sold throughout the United States and internationally.  Fender developed rights in each of the FENDER Marks long before the activities at issue in this Verified Complaint, and the FENDER Marks

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:   (602) 364-7000

serve as a powerful indicator of the source of goods and services provided by or otherwise affiliated with Fender.

21.     Fender and its authorized licensees have invested and are currently investing significant time and effort, and tens of millions of dollars, in advertising, marketing, and promoting the FENDER Marks and the goods provided under the FENDER Marks, including musical instruments and lifestyle products, in many forms of media, including print, television, radio, and online. The FENDER Marks are widely recognized for quality musical instruments and lifestyle products, and in connection with related goods and services as provided by Fender and through its authorized licensees.

22.     Fender and its authorized licensees have sold many millions of dollars worth of products using the FENDER Marks in the United States and internationally. As a result of the longstanding, continuous, and exclusive use, promotion of and sales under of the FENDER Marks by Fender and its licensees, the FENDER Marks enjoy wide public acceptance and association with Fender, and Fender has built up and now owns tremendously valuable goodwill that is symbolized by the FENDER Marks.

23.     The purchasing public has come to associate the FENDER Marks as identifying goods created, distributed, authorized, or licensed exclusively by Fender. The FENDER Marks are distinctive and each achieved significant secondary meaning and fame well before the complained-of conduct of Defendants.

**The License Agreement**

24.     On or about September 6, 2012, Fender and Dragonfly entered into that certain License Agreement ("Agreement"), by which Fender agreed to grant, and Dragonfly agreed to take, a non-exclusive, limited, non-transferable, and non-sub-licensable right and license to use certain Fender trademarks in conjunction with the manufacturing, sourcing, advertising, marketing, distribution, and/or sale of certain apparel products (the "Licensed Products"), subject to the terms and conditions of the Agreement.

25.     A true and correct copy of the Agreement is attached as Exhibit B.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

26.     Pursuant to Schedule B to the Agreement, which is incorporated into and made part of the Agreement, the trademarks subject *Fender* *Fender* Agreement include the following:     FENDER™,              ™,              ™,     TELECASTER™, STRATOCASTER™, PRECISION BASS™, JAZZ BASS™, THE SPIRIT OF ROCK-N-ROLL™, the distinctive body and headstock designs of the TELECASTER™ guitar, STRATOCASTER™ guitar, PRECISION BASS™ guitar, and JAZZ BASS™ guitar, and any other Fender trademark that Fender authorizes in advance and in writing (collectively, the "Subject Marks").

27.     Pursuant to paragraph 2 of the Agreement, in no event shall Dragonfly do anything that will adversely or negatively affect the ownership of Fender's trademarks.

28.     Pursuant to paragraph 3 of the Agreement, the Agreement became effective as of September 6, 2012, and was to expire on December 31, 2014, unless otherwise stated or terminated for reasons set forth in the Agreement (the "Term").

29.     Pursuant to paragraph 4 of the Agreement, as consideration for the Agreement, among other things, Dragonfly agreed to pay Fender a royalty equal to 10 percent of the invoiced price on net sales of the Licensed Products.

30.     As further consideration for the Agreement, Dragonfly agreed to pay Fender a minimum guaranteed royalty of $100,000 for the period January 1, 2013, to December 31, 2013; and a minimum guaranteed royalty of $125,000 for the period January 1, 2014, to December 31, 2014, for a total minimum guaranteed royalty for the Term of $225,000 (collectively, the "Minimum Guaranteed Royalties").

31.     Pursuant to the Agreement, if the royalties paid by Dragonfly to Fender each year are less than the minimum royalties due for such year, then Dragonfly must pay Fender the difference between the guaranteed minimum royalty amount and the amount of royalties actually paid for that year.  Such amount shall be due with the payment required for the final quarter of each year.

32.     Pursuant to paragraph 6 of the Agreement, upon request, Dragonfly shall provide Fender with any and all information and/or documents relating to the

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

manufacturing, sourcing, advertising, marketing, distribution, and/or sale of the Licensed Products.

33.     Pursuant to paragraph 8 of the Agreement, Dragonfly's policies of sale, marketing, and distribution of Licensed Products shall be of a high standard.

34.     Pursuant to paragraph 11(a) of the Agreement, Fender may terminate the Agreement in the event of a material breach.   In the event Fender terminates the Agreement in the event of a material breach, Dragonfly shall not be entitled to exhaust its remaining inventory, or otherwise use any of Fender's intellectual property without Fender's advance, written consent.   In the event Fender terminates the Agreement in the event of a material breach, Fender shall have the right to have Dragonfly recall all Licensed Products at Dragonfly's expense.

35.     Pursuant to paragraph 11(b) of the Agreement, it shall constitute a material breach of the Agreement if Dragonfly fails to pay the Minimum Guaranteed Royalties.

36.     Pursuant to paragraph 11(c) of the Agreement, Dragonfly is required to avoid dumping or selling Licensed Products to retailers such that it negatively affects Fender's brands.

37.     Pursuant to paragraph 11(c) of the Agreement, in the event the Agreement is terminated for any reason, all payments not yet paid by Dragonfly to Fender shall become due and payable immediately to Fender, including, but not limited to, the Minimum Guaranteed Royalties required through the end of the original Term of the Agreement.

38.     Pursuant to paragraph 14 of the Agreement, Fender disclaimed any warranty that Dragonfly would be successful in the production, distribution, and/or sale of any Licensed Products or would achieve any particular rate, cost or quality of production.

39.     Pursuant to Schedule F to the Agreement, which is incorporated as part of the Agreement by reference, either party may apply to a court of competent jurisdiction to

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE:   (602) 364-7000

seek injunctive relief pertaining to the Agreement.  The Agreement contains a provision for arbitration of damages claims.[1]

40.     On or about September 12, 2013, pursuant to that certain First Amendment to the Fender Musical Instruments Corporation and Umerco Clothing Inc. dba Dragonfly Clothing License Agreement ("First Amendment"), Dragonfly assigned its obligations under the Agreement to Garmento.

41.     A true and correct copy of the First Amendment is attached as Exhibit C.

**The Guaranty**

42.     On or about September 6, 2012, the principal owners of Dragonfly, Defendants Edward Kotab and Talal Kotab ("Guarantors"), in order to induce Fender to transact business with Dragonfly, executed that certain Personal Guaranty ("Guaranty").

43.     A true and correct copy of the Guaranty is attached as Exhibit D.

44.     Pursuant to paragraph 1 of the Guaranty, Guarantors agreed to unconditionally and irrevocably guaranty to Fender full and prompt payment of all liabilities of Dragonfly to Fender of whatever nature.

45.     Pursuant to paragraph 2 of the Guaranty, Guarantors authorized Fender to proceed against Guarantors on the liabilities of Dragonfly without first foreclosing any security or proceeding against Dragonfly.

46.     Pursuant to paragraph 2 of the Guaranty, Guarantors authorized Fender, without notice or demand and without affecting their liability under the Guaranty, to transfer, assign, or negotiate the terms of the liabilities of Dragonfly, and to change any of the terms, covenants, conditions, or provisions of the documents relating to liabilities of Dragonfly.

47.     Pursuant to paragraph 4(a) of the Guaranty, Guarantors specifically and without reservation waived presentment, demand, protest, notice of protest, notice of

---

[1] Fender is content to proceed by litigation in this Court, but requests that the Court set a reasonable deadline, such as 30 days, for Dragonfly to move to dismiss the claim for damages in this action should it desire to do so.

dishonor, notice of non-payment, notice of default, notice of foreclosure or of any public or private sale, and notice of acceptance of the Guaranty.

48.     Pursuant to paragraph 4(c) of the Guaranty, Guarantors specifically and without reservation waived any right to require Fender to proceed against Dragonfly or to proceed against any security now or hereafter held by Fender or to pursue any other remedy in Fender's power.

49.     Pursuant to paragraph 5 of the Guaranty, the Guaranty is a guaranty of payment and not of collection, and the liability of Guarantors on the Guaranty shall be direct and immediate and not conditioned or contingent upon the pursuit by Fender of whatever remedies Fender may have against Dragonfly or any other person or security of liens Fender may possess.

50.     Pursuant to paragraph 13 of the Guaranty, Guarantors agreed to pay reasonable attorneys' fees and all other costs and expenses that may be incurred by Fender in the enforcement of the Guaranty.

51.     Foizie Kotab consented to the Guaranty as spouse of Talal Kotab.

52.     The First Amendment provides that the Guaranty shall remain in full force and effect.

### Breach of the License Agreement and Guaranty

53.     Minimum guaranteed royalties for the period January 1, 2013, to December 31, 2013, were due on or before January 15, 2014, in the amount of $100,000.

54.     For the period January 1, 2013, to December 31, 2013, Dragonfly paid Fender only $4,343.00 in royalties.

55.     As such, $95,657.00 was due to be paid to Fender by January 15, 2014.

56.     On January 13, 2014, Defendant Edward Kotab visited Fender's offices, where Fender reminded him that the minimum guaranteed royalties were due to be paid in two days.  Mr. Kotab represented that he would pay the contractually-required amounts by January 15, 2014, as required.  During this January 13, 2014, meeting, Mr. Kotab also

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE: (602) 364-7000

informed Fender that his company had more than $700,000 of inventory of Licensed Products on hand.

57.     On January 15, 2014, Fender representatives sent Edward Kotab an email reminding him of the payment deadline and inquiring when Fender might expect the wire payment and what the total amount would be.  Mr. Kotab did not respond.

58.     Garmento failed and refused to pay Fender the minimum guaranteed royalties duly owing by January 15, 2014.

59.     On January 16, 2014, Fender representatives sent Edward Kotab an email advising that the minimum guaranteed royalty payment was late, and asking Mr. Kotab to respond immediately and advise when the wire payment would be received.  Mr. Kotab did not respond.

60.     On January 16, 2014, Fender received an email from Sandy Gabourel in the offices of Garmento stating that Edward Kotab was out with the flu and would return on January 20, 2014.

61.     Fender responded on January 17, 2014, advised Mr. Kotab that the payment was very important, and gave Mr. Kotab until January 20, 2014, to remit full payment. Fender advised Mr. Kotab that Fender would terminate the Agreement and take appropriate actions if it did not receive the payment by January 20, 2014.  Mr. Kotab did not respond.

62.     Garmento's failure and refusal to pay the minimum guaranteed royalties constitutes a material breach of the Agreement.

63.     Accordingly, by letter dated January 27, 2014 ("Termination Letter"), Fender advised Garmento and Guarantors that the Agreement is terminated effective January 27, 2014, pursuant to paragraph 11(a) of the Agreement because, among other reasons, Garmento failed and refused to pay the duly owing minimum guaranteed royalties.

64.     A true and correct copy of the Termination Letter is attached as Exhibit E.

65.     Fender further advised Garmento in the Termination Letter that, although Fender retained the right pursuant to paragraph 11(c) to require Garmento to recall all

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:  (602) 364-7000

outstanding Licensed Products at Garmento's expense, Fender would not at that time require that Licensed Products be recalled.   However, Fender requested a detailed summary of all outstanding inventory, including style number, size, and on-hand inventory levels, for purposes of further directing Garmento how to handle such inventory.

66.   Fender further advised Garmento in the Termination Letter to immediately discontinue all use of Fender's trademarks and/or copyrights as well as the promotion, distribution and sale of the Licensed Products.

67.   Fender further advised Garmento in the Termination Letter that, as of the termination date of January 27, 2014, all payments not yet paid by Garmento to Fender are immediately due and payable, including the minimum guaranteed royalties due through the end of the original Term of the Agreement.

68.   Fender further advised Guarantors in the Termination Letter of Guarantors' obligations pursuant to the Guaranty.

69.   Accordingly, in the Termination Letter, Fender demanded immediate payment from Garmento, or Guarantors of $220,657.00 (the difference between $4,343.00, the royalties paid, and $225,000, the minimum guaranteed royalties due through the end of the original Term).

70.   Fender advised Garmento and Guarantors that it retained the right to pursue legal action should Guarantors not pay the required amounts by January 30, 2014.

71.   Garmento and Guarantors have failed and refused to pay the $220,657.00 due pursuant to the Agreement and Guaranty.

72.   Notwithstanding Fender's termination of the Agreement, Defendants continue to market and sell Licensed Products, without Fender's consent, through their websites   http://fenderbydragonfly.com/   and   http://www.americangarmento.com/. Notwithstanding Fender's termination of the Agreement, Defendants continue to use the trademarked name "fender" in the former domain name without Fender's consent.

73.   On January 31, 2014, Fender's customer relations department received an unsolicited call from Benny Abramoff with Benny's Aloha Shirts stating that Garmento

BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000

contacted him and presented him with an offer to purchase a large amount of Fender licensed shirts at cost.

74.     Garmento misrepresented to Mr. Abramoff that Garmento was selling under a Fender license that will be good for another two years, which is false.

75.     Garmento represented to Mr. Abramoff that it was expecting shipments of Fender-licensed product from overseas, which upon information and belief, is in addition to the $700,000 in inventory on hand discussed at the January 13, 2014, meeting at Fender's offices.

## COUNT ONE

### (Breach of Contract – License Agreement)

76.     Fender incorporates the foregoing allegations as if fully set forth herein.

77.     The Agreement is a contract requiring, among other things, that Garmento pay to Fender minimum guaranteed royalties of $100,000 on or before January 15, 2014, for the period January 1, 2013, to December 31, 2013.

78.     Fender has performed all of its obligations pursuant to the Agreement.

79.     Garmento failed and refused to pay the contractually required amount by January 15, 2014.

80.     Garmento's failure and refusal to pay the contractually required amount is a material breach of the Agreement pursuant to paragraph 11(b) of the Agreement.

81.     Fender terminated the Agreement pursuant to paragraph 11(a) of the Agreement as a result of Garmento's material breach.

82.     Upon termination of the Agreement, all minimum guaranteed royalties due through end of the original Term of the Agreement, in the amount of $225,000, became immediately due and payable.

83.     By letter dated January 27, 2014, Fender demanded immediate payment of $220,657.00, the amount of the minimum guaranteed royalties still due and outstanding.

84.     Garmento failed and refused to pay the contractually required amounts.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:     (602) 364-7000

85.    Garmento's failure and refusal to pay the contractually required amounts constitutes a breach of the Agreement.

86.    Fender has been damaged in an amount not less than $220,657.00, plus interest, costs of collection, and other charges, which continue to accrue.

87.    Garmento's marketing and sale of Licensed Products through its websites and/or to retailers, following Fender's termination of the Agreement, including a website that incorporates Fender's trademarked name without Fender's consent, constitutes a further breach of the Agreement.

88.    Garmento's marketing and sale of Licensed Products in violation of the Agreement has damaged Fender in an amount to be determined at trial, including but not limited to, damages relating to loss or dilution of goodwill and business reputation.

89.    This action arises out of contract pursuant to A.R.S. § 12-341.01.

## COUNT TWO

### (Breach of Contract – Personal Guaranty)

90.    Fender incorporates the foregoing allegations as if fully set forth herein.

91.    The Guaranty is a contract by which, among other things, Guarantors agreed to unconditionally and irrevocably guaranty to Fender full and prompt payment of all liabilities of Garmento to Fender of whatever nature.

92.    Fender has performed all of its obligations under the Guaranty.

93.    Garmento has incurred a liability to Fender in an amount not less than $220,657.00 pursuant to the Agreement, which has become immediately due and payable as a result of Garmento's material breach of the Agreement and Fender's ensuing termination of the Agreement.

94.    Guarantors have failed and refused to pay Fender the contractually required amounts.

95.    Guarantors' failure and refusal to pay Fender the contractually required amounts constitutes a breach of the Guaranty.

96.     Fender has been damaged in an amount not less than $220,657.00, plus interest, costs of collection, and other charges, which continue to accrue.

97.     This action arises out of contract pursuant to A.R.S. § 12-341.01.

## COUNT THREE

### (Federal Trademark Infringement)

98.     Fender incorporates the foregoing allegations as if fully set forth herein.

99.     Defendants' conduct in continuing to sell Licensed Products in violation of the Agreement is causing immediate and irreparable injury to Fender and will continue to damage Fender and to deceive the public unless enjoined by this Court.

100.    Defendants' use of the Subject Marks or confusingly similar imitations of the Subject Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Fender, or associated or connected with Fender, or have the sponsorship, endorsement, or approval of Fender.

101.    Defendants have used and continue to use marks and trade dress confusingly similar to Fender's federally registered FENDER Marks in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Fender's goodwill and reputation as symbolized by the federally registered FENDER Marks, for which Fender has no adequate remedy at law.

102.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Fender's federally registered FENDER Marks, to Fender's great and irreparable injury.

103.    Defendants have caused, and are likely to continue causing, substantial injury to the public and to Fender, and Fender is entitled to injunctive relief and impoundment and destruction of Defendants' infringing products, and to recover Fender's profits, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, 1117 and 1118.

BRYAN CAVE LLP
Two North Central Avenue  Suite 2200
Phoenix, AZ  85004-4406
Telephone:  (602) 364-7000

## COUNT FOUR

### (Federal Cyberpiracy)

104.   Fender incorporates the foregoing allegations as if fully set forth herein.

105.   Defendants register, traffic in, or use a domain name that is identical or confusingly similar to the federally-registered FENDER® mark.

106.   Defendants have a bad-faith intent to profit from the FENDER® mark used in their domain name, through which they sell goods bearing the Fender brand without Fender's consent.

107.   Fender is entitled to an order from the Court ordering the forfeiture or cancellation of the domain name http://fenderbydragonfly.com/ or the transfer of the domain name to Fender pursuant to 11 U.S.C. § 1125(d).

## COUNT FIVE

### (Permanent Injunction)

108.   Fender incorporates the foregoing allegations as if fully set forth herein.

109.   Pursuant to paragraph 11(a) of the Agreement, in the event Fender terminates the Agreement in the event of a material breach, Garmento shall not be entitled to exhaust its remaining inventory, or otherwise use any of Fender's intellectual property without Fender's advance, written consent.

110.   Fender has terminated the Agreement because of Garmento's material breach.

111.   Fender is entitled to a permanent injunction forever enjoining and restraining Defendants and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants and each of them, pursuant to the Agreement and the powers granted to this Court by 15 U.S.C. § 1116 and relevant state statutes, from:

   a. exhausting their remaining inventory of Licensed Products, or dumping or otherwise selling Licensed Products;

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ   85004-4406
TELEPHONE: (602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:  (602) 364-7000

b. selling on any and all online sites including, but not limited to, http://fenderbydragonfly.com/, and http://www.americangarmento.com/, and requiring Defendants to transfer the http://fenderbydragonfly.com/ domain name, and any other domain names incorporating Fender intellectual property, to Fender;

c. using the FENDER Marks, the Subject Marks, and/or confusingly similar imitations of the Fender's intellectual property, in connection with Defendants' business or goods or services, including but not limited to the advertising of those goods or services; and

d. using any trademark, trade dress, service mark, name, logo, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to, the trademarks, service marks, or logos, of Fender, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' business or services are the business or services of Fender, or are sponsored by or in any way related to Fender.

WHEREFORE, Plaintiff Fender Musical Instruments Corporation requests that the Court enter a Judgment:

(A)  Awarding Fender damages against Garmento in an amount not less than $220,657.00, plus interest, costs of collection, and other charges;

(B)  Awarding Fender damages against Guarantors in an amount not less than $220,657.00, plus interest, costs of collection, and other charges;

(C)  Awarding Fender damages for Defendants trademark infringement and breach of contract in continuing to sell and market Licensed Products without Fender's consent and in violation of the Agreement;

(D)  Permanently enjoining and restraining Defendants and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in

concert or participation with Defendants and each of them, pursuant to the Agreement and the powers granted to this Court by 15 U.S.C. § 1116 and relevant state statutes, from:

    a. exhausting their remaining inventory of Licensed Products, or dumping or otherwise selling Licensed Products;

    b. selling on any and all online sites including, but not limited to, http://fenderbydragonfly.com/, and http://www.americangarmento.com/, and requiring Defendants to transfer the http://fenderbydragonfly.com/ domain name, and any other domain names incorporating Fender intellectual property, to Fender;

    c. using the FENDER Marks, the Subject Marks, and/or confusingly similar imitations of the Fender's intellectual property, in connection with Defendants' business or goods or services, including but not limited to the advertising of those goods or services; and

    b. using any trademark, trade dress, service mark, name, logo, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to, the trademarks, service marks, or logos, of Fender, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' business or services are the business or services of Fender, or are sponsored by or in any way related to Fender.

(E) Awarding Fender reasonable attorneys' fees and costs; and

(F) Awarding Fender such other and further relief as justice may require.

DATED this 5th day of February, 2014.

                BRYAN CAVE LLP

                By  /s/ Sean K. McElenney
                    Sean K. McElenney
                    Gregory B. Iannelli
                    Two N. Central Avenue, Suite 2200
                    Phoenix, AZ  85004-4406
                    Attorneys for Plaintiff

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE   SUITE 2200
PHOENIX, AZ  85004-4406
TELEPHONE:   (602) 364-7000

**VERIFICATION**

I, William P. Mahoney, am a Defendant in the above-mentioned matter individually and as sole trustee and sole settlor of the Mahoney Revocable Trust dated April 5, 1999. I have read the foregoing Counterclaim and know the contents thereof, and the same are true to the best of my knowledge, except for those matters therein alleged upon information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

William P. Mahoney

-11-