Kenneth M. Motolenich-Salas (AZ Bar No. 027499)
kmotolenich@weissiplaw.com
Mark Weiss (ABN 013709)
mweiss@weissiplaw.com
WEISS & MOY, P.C.
4204 N. Brown Avenue
Scottsdale, AZ 85251
Tel.: (480) 994-8888
Fax: (480) 947-2663
*Attorneys for Defendants/Counterclaimants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Fender Musical Instruments Corporation, | Case No. 14-cv-00208-NVW |
| Plaintiff and Counterclaim Defendant, | **ANSWER AND COUNTERCLAIMS** |
| v. | |
| Umerco Clothing Inc. d.b.a. Dragonfly Clothing; American Garmento Inc.; Edward Kotab; Talal Kotab; and Foizie Kotab, | |
| Defendants/ Counterclaimants. | |

## ANSWER

Defendants Umerco Clothing Inc. d.b.a. Dragonfly Clothing, ("Umerco"), American Garmento Inc. ("Garmento"), Edward Kotab ("E. Kotab"), Talal Kotab ("T. Kotab"), and Foizie Kotab ("F. Kotab") (collectively "Defendants") by and through undersigned counsel, in and for their Answer to Plaintiff Fender Musical Instruments Corporation's ("Fender") Complaint (Doc. No. 1), state and allege as follows:

1.     Defendants admit the allegations of paragraph 1.

2.     Defendants admit the allegations of paragraph 2.

1

3.   Defendants admit the allegations of paragraph 3.

4.   Defendants admit the allegations of paragraph 4.

5.   Defendants admit the allegations of paragraph 5.

6.   Defendants admit the allegations of paragraph 6.

7.   Defendants deny the allegations of paragraph 7.

8.   Defendants admit the allegations of paragraph 8.

9.   Defendants admit the allegations of paragraph 9.

10.  Defendants admit the allegations of paragraph 10.

## GENERAL ALLEGATIONS

### Fender And Its Marks

11.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 11 and, on that basis, deny the same.

12.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 12 and, on that basis, deny the same.

13.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 13 and, on that basis, deny the same.

14.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 14 and, on that basis, deny the same.

15.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 15 and, on that basis, deny the same.

16.  Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 16 and, on that basis, deny the same.

17.  With respect to the allegations set forth in paragraph 17, Defendants admit that the table provided by Plaintiff in such paragraph purports to list information regarding Plaintiff's federally-registered trademarks available through the public records of the United States Patent and Trademark Office ("USPTO") TESS database, but is without sufficient information to form a belief as to the truthfulness of the remaining allegations set forth in paragraph 17 and, on that basis, deny the same.

18.     With respect to the allegations set forth in paragraph 18, Defendants admit that the paragraph refers to papers purported filed by Plaintiff with the USPTO, with the record of such filings available through the USPTO's TSDR database, but is without sufficient information to form a belief as to the truthfulness of the remaining allegations set forth in paragraph 18 and, on that basis, deny the same.

19.     Defendants admit that Plaintiff denotes the trademarks referenced in the Complaint under the shorthand "FENDER Marks."

20.     Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 20 and, on that basis, deny the same.

21.     Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 21 and, on that basis, deny the same.

22.     Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 22 and, on that basis, deny the same.

23.     Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in paragraph 23 and, on that basis, deny the same.

**The License Agreement**

24.     Responding to the allegations set forth in Paragraph 24, Defendants only admit that on September 6, 2012, Plaintiff and Defendant Umerco Clothing entered into a license agreement ("License Agreement") with respect to the right to use FENDER Marks with respect to the commercialization of certain apparel items, but deny any remaining allegations of the paragraph.

25.     Responding to the allegations set forth in Paragraph 25, Exhibit B to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

26.     Responding to the allegations set forth in Paragraph 26, Schedule B to the License Agreement attached at Exhibit B to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

27.     Responding to the allegations set forth in Paragraph 27, paragraph 2 of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

28.     Responding to the allegations set forth in Paragraph 28, paragraph 3 of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

29.     Responding to the allegations set forth in Paragraph 29, paragraph 4 of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

30.     Responding to the allegations set forth in Paragraph 30, the Minimum Guaranteed Royalties referenced therein are taken from the License Agreement attached to the Complaint at Exhibit B, which is a document which in turn provides the best evidence of such royalties, speaking for itself, and thus not requiring any further response by Defendants.

31.     Responding to the allegations set forth in Paragraph 31, the purported o Minimum Guaranteed Royalties referenced therein are taken from the License Agreement attached to the Complaint at Exhibit B, which is a document which in turn provides the best evidence of such royalties, speaking for itself, and thus not requiring any further response by Defendants.

32.     Responding to the allegations set forth in Paragraph 32, paragraph 6 of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

33.     Responding to the allegations set forth in Paragraph 33, paragraph 8 of the License Agreement is from a document which in turn provides the best evidence of such

paragraph, speaking for itself, and thus not requiring any further response by Defendants.

34.     Responding to the allegations set forth in Paragraph 34, paragraph 11(a) of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

35.     Responding to the allegations set forth in Paragraph 35, paragraph 11(b) of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

36.     Responding to the allegations set forth in Paragraph 36, paragraph 11(c) of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants

37.     Responding to the allegations set forth in Paragraph 37, paragraph 11(c) of the License Agreement is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

38.     Responding to the allegations set forth in Paragraph 38, Defendants state that Fender, through their agent Jeffrey Quinn, represented to Defendants before the date of execution of the License Agreement between Umerco Clothing and Fender that Umerco Clothing would have profitable success as a result of performance of its obligations under the License Agreement, referencing specifically the success of Defiance Corporation in making $16 million in revenue with a net profit of $9 million in just one year from its sales of Fender-licensed products and that Umerco Clothing was certain to have similar, if not greater, success.  Further responding to the allegations of Paragraph 38, Defendants state that paragraph 4 of the License Agreement is from a

document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

39.     Responding to the allegations set forth in Paragraph 39, Schedule F to the License Agreement attached at Exhibit B to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

40.     Responding to the allegations set forth in Paragraph 40, Defendants only admit that on September 12, 2013, Defendant Umerco Clothing assigned its obligations under the License Agreement attached to the Complaint at Exhibit B to Defendant American Garmento, but deny any remaining allegations of the paragraph.

41.     Responding to the allegations set forth in Paragraph 41, Exhibit C to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

**The Guaranty**

42.     Responding to the allegations set forth in Paragraph 42, Defendants only admit that on or about September 6, 2013, Defendants Edward and Talal Kotab executed a Personal Guaranty ("Guaranty"), which is attached to the Complaint at Exhibit D, but deny any remaining allegations of the paragraph.

43.     Responding to the allegations set forth in Paragraph 43, Exhibit D to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

44.     Responding to the allegations set forth in Paragraph 44, paragraph 11 of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

45.     Responding to the allegations set forth in Paragraph 45, paragraph 2 of the Guaranty from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

46.     Responding to the allegations set forth in Paragraph 46, paragraph 2 of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

47.     Responding to the allegations set forth in Paragraph 47, paragraph 4(a) of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

48.     Responding to the allegations set forth in Paragraph 48, paragraph 4(c) of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

49.     Responding to the allegations set forth in Paragraph 49, paragraph 5 of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

50.     Responding to the allegations set forth in Paragraph 50, paragraph 13 of the Guaranty is from a document which in turn provides the best evidence of such paragraph, speaking for itself, and thus not requiring any further response by Defendants.

51.     Responding to the allegations set forth in Paragraph 51, such paragraph refers to a purported consent set forth in the Guaranty, which is a written document and thus provides the best evidence of any such spousal consent, speaks for itself, and thus not requiring any further response by Defendants.

52.     Responding to the allegations set forth in Paragraph 52, such paragraph references two written documents, the First Amendment and the Guaranty, each of which is a written document and in turn provides the best evidence of each such

document, speaking for itself, and thus not requiring any further response by Defendants.

**Breach of the License Agreement and Guaranty**

53.    Responding to the allegations set forth in Paragraph 53, such paragraph refers to Minimum Guaranteed Royalties which in turn were from the License Agreement attached to the Complaint at Exhibit B, which is a document which in turn provides the best evidence of such royalties, speaking for itself, and thus not requiring any further response by Defendants.

54.    Defendants admit the allegations of Paragraph 54.

55.    Defendants deny the allegations of Paragraph 55.

56.    Defendants deny the allegations of Paragraph 56.

57.    Defendants admit the allegations of Paragraph 57.

58.    Defendants admit the allegations of Paragraph 58.

59.    Defendants admit the allegations of Paragraph 59.

60.    Defendants admit the allegations of Paragraph 60.

61.    Defendants admit the allegations of Paragraph 61.

62.    Defendants deny the allegations of Paragraph 62.

63.    Responding to Paragraph 63, such paragraph refers to various writings, including the Termination Letter and the License Agreement, each of which is a written document which in turn provides the best evidence of the contents and provisions thereof, speaking for itself, and thus not requiring any further response by Defendants.

64.    Responding to the allegations set forth in Paragraph 64, Exhibit E to the Complaint is a document, is the best evidence of its contents, and thus speaks for itself, thus not requiring any further response by Defendants.

65.    Responding to Paragraph 65, such paragraph refers to the Termination Letter, which is a written document which in turn provides the best evidence of the contents and provisions thereof, speaking for itself, and thus not requiring any further response by Defendants.

66.     Responding to Paragraph 66, such paragraph refers to the Termination Letter, which is a written document which in turn provides the best evidence of the contents and provisions thereof, speaking for itself, and thus not requiring any further response by Defendants.

67.     Responding to Paragraph 67, such paragraph refers to the Termination Letter, which is a written document which in turn provides the best evidence of the contents and provisions thereof, speaking for itself, and thus not requiring any further response by Defendants.

68.     Responding to the allegations set forth in Paragraph 68, such paragraph references two written documents, the Guaranty and Termination Letter, each of which is a written document and in turn provides the best evidence of each such document, speaking for itself, and thus not requiring any further response by Defendants.

69.     Responding to the allegations set forth in Paragraph 69, Defendants deny that they are obligated to pay any royalties for the entire year of 2014 as such year is still, for lack of a better word, still ongoing.  Further responding to the allegations set forth in Paragraph 69, Defendants respond that such paragraph references references the Termination Letter, which is a written document and in turn provides the best evidence of the letter and its contends, speaking for itself, and thus not requiring any further response by Defendants.

70.     Responding to the allegations set forth in Paragraph 70, such paragraph refers to a statement made in Termination Letter, which is a written document and in turn provides the best evidence of such allegation, speaks for itself, and thus no further response by Defendant is required.

71.     Defendants admit the allegations in Paragraph 71.

72.     Responding to the allegations set forth in Paragraph 72, Defendants admit that the websites referenced in such paragraph remained up after January 27, but only remained up due to the fact that Defendants could not effectuate their disablement immediately due to a time lag between requests made concerning such requests from

Defendants for disablement to Defendants' website vendor.  Further responding to the allegations set forth in Paragraph 72, Defendants state that no sales occurred through any of the websites on or after January 27.

73.     Defendants are without sufficient information to form a belief as to the truthfulness of the allegations set forth in Paragraph 73 and, on that basis, deny the same.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants deny the allegations in Paragraph 75.

## COUNT ONE

### (Purported Breach of Contract – License Agreement)

76.     Defendants incorporate the foregoing responses to the allegations of the Paragraphs 1-75 of Complaint as set forth herein.

77.     Defendants admit the allegations of Paragraph 77.

78.     Defendants deny the allegations of Paragraph 78.

79.     Defendants admit the allegations of Paragraph 79.

80.     Defendants deny the allegations of Paragraph 80.

81.     Responding to the allegations set forth in Paragraph 81, Defendants admit that Fender purported to terminate the License Agreement, but deny the remaining allegations set forth in Paragraph 81.

82.     Responding to the allegations set forth in Paragraph 82, such paragraph refers to a provision in the License Agreement, which is a written document and in turn provides the best evidence of such allegation, speaks for itself, and thus no further response by Defendants is required.

83.     Responding to the allegations set forth in Paragraph 83, such paragraph refers to a purported termination letter, which is a written document and in turn provides the best evidence of such allegation, speaks for itself, and thus no further response by Defendants is required.

1    84.    Responding to the allegations set forth in Paragraph 84, Defendants state

2  that they did not pay $100,000 of royalties on or before December 31, 2013 but that such

3  non-payment was preceded by acts, amounting themselves to material breaches of the

4  covenant of good faith and fair dealing between the parties, committed by Fender

5  through its agent Jeffrey Quinn in wrongfully demanding extra consideration as a

6  condition precedent for obtaining obtain Fender's performance under the License

7  Agreement in approving all offers for sale by Defendants of Fender-licensed products.

8    85.    Responding to the allegations set forth in Paragraph 85, Defendants state

9  that they did not pay $100,000 of royalties on or before December 31, 2013 but that such

10  non-payment was preceded by acts, amounting themselves to material breaches of the

11  covenant of good faith and fair dealing between the parties, committed by Fender

12  through its agent Jeffrey Quinn in wrongfully demanding extra consideration as a

13  condition precedent for obtaining Fender's performance under the License Agreement in

14  approving all offers for sale by Defendants of Fender-licensed products.

15    86.    Defendants deny the allegations of Paragraph 86.

16    87.    Defendants deny the allegations of Paragraph 87.

17    88.    Defendants deny the allegations of Paragraph 88.

18    89.    Defendants admit that Fender contends that Count One arises out of

19  contract pursuant to A.R.S. § 12-341.01.

20  ### COUNT TWO

21  **(Purported Breach of Contract – Personal Guaranty)**

22    90.    Defendants incorporate the foregoing responses to the allegations of the

23  Paragraphs 1-89 of Complaint as set forth herein.

24    91.    Responding to the allegations set forth in Paragraph 91, such paragraph

25  refers to a personal guaranty which is a written document and thus in turn provides the

26  best evidence of such allegation, speaks for itself, and thus no further response by

27  Defendants is required.

28    92.    Defendants deny the allegations of Paragraph 92.

93.    Defendants deny the allegations of Paragraph 93.

94.    Responding to the allegations set forth in Paragraph 93, Defendants state that they did not pay $100,000 of royalties on or before December 31, 2013 but that such non-payment was preceded by acts, amounting themselves to material breaches of the covenant of good faith and fair dealing between the parties, committed by Fender through its agent Jeffrey Quinn in wrongfully demanding extra consideration as a condition precedent for obtaining Fender's performance under the License Agreement in approving all offers for sale by Defendants of Fender-licensed products.

95.    Defendants deny the allegations of Paragraph 95.

96.    Defendants deny the allegations of Paragraph 88.

97.    Defendants admit that Fender contends that Count One arises out of contract pursuant to A.R.S. § 12-341.01.

## COUNT THREE

### (Purported Federal Trademark Infringement)

98.    Defendants incorporate the foregoing responses to the allegations of the Paragraphs 1-97 of Complaint as set forth herein.

99.    Defendants deny the allegations of Paragraph 99.

100.   Defendants deny the allegations of Paragraph 100.

101.   Defendants deny the allegations of Paragraph 101.

102.   Defendants deny the allegations of Paragraph 102.

103.   Defendants deny the allegations of Paragraph 103.

## COUNT FOUR

### (Purported Federal Cyberpiracy)

104.   Defendants incorporate the foregoing responses to the allegations of the Paragraphs 1-103 of Complaint as set forth herein.

105.   Defendants deny the allegations of Paragraph 105.

106.   Defendants deny the allegations of Paragraph 106.

107.   Defendants deny the allegations of Paragraph 107.

## COUNT FIVE

### (Permanent Injunction)

108.   Defendants incorporate the foregoing responses to the allegations of the Paragraphs 1-107 of Complaint as set forth herein.

109.   Responding to the allegations set forth in Paragraph 109, such paragraph refers to the License Agreement between the parties which is a written document and thus in turn provides the best evidence of such allegation, speaks for itself, and thus no further response by Defendants is required.

110.   Responding to the allegations set forth in Paragraph 110, Defendants admit that Fender purports to have terminated the License Agreement, but denies the remaining allegations set forth in Paragraph 110.

111.   Defendants deny the allegations of Paragraph 111.

## GENERAL DENIAL

Defendants deny each and every allegation of the Complaint that is not specifically and expressly admitted herein.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to the Complaint:

### First Affirmative Defense – Failure to State a Claim

1.   Defendants allege that the Complaint fails to state a claim on which relief can be granted.

### Second Affirmative Defense – Unclean Hands

2.   By virtue of Fender's wrongful statements, conduct, agreements, and/or omissions through its agent Jeffrey Quinn against Defendants, Fender is barred from recovery in this action under the doctrine of unclean hands.

### Third Affirmative Defense – Estoppel

3.   By virtue of Fender's material and misleading statements, conduct, agreements, and/or omissions through its agent Jeffrey Quinn against Defendants, Fender is estopped as to any and all rights which it claims under the facts alleged in the

1   Complaint under the doctrine of estoppel since Defendants would suffer material

2   prejudice proximately caused by Fender's aforementioned actions.

3                     Fourth Affirmative Defense – Waiver

4          4.      By virtue of Fender's statements, conduct, agreements, and/or omissions,

5   Fender has waived any and all rights which Fender claims under the facts alleged in the

6   Complaint under the doctrine of waiver.

7              Fifth Affirmative Defense – No Likelihood of Confusion

8          5.      The trademark infringement and cyberpiracy claims set forth in the

9   Complaint are each barred in whole or in part because Fender cannot demonstrate any

10  likelihood that the public will be confused, mistaken, deceived, or misled as to the source

11  of Fender's goods or that any of Defendants' goods are associated with or endorsed by

12  Fender, or as otherwise alleged by Fender in the Complaint, since Defendants' use of any

13  asserted trademark in connection with the sale of clothing is (i) not confusingly similar to

14  any of the Fender Trademarks which are primarily, if not solely, directed at non-clothing

15  goods and services and/or (ii) materially distinct from any of the products marketed by

16  Fender under any of the Fender Trademarks.

17         6.      By virtue of the absence of any such likelihood of confusion, mistake, or

18  deception, Defendants has not violated any of Fender's federal trademark rights in the

19  Fender Trademarks and thus is not liable for trademark infringement or cyberpiracy set

20  forth in the Complaint.

21  Sixth Affirmative Defense – Lack of Secondary Meaning, Inherent Distinctiveness, or

22                          Acquired Distinctiveness

23         7.      The Fender Trademarks lack the requisite secondary meaning, acquired

24  distinctiveness, or inherent distinctiveness with respect to clothing to support its claim for

25  trademark infringement or cyberpiracy, such that the Fender Trademarks have no

26  inherent distinctiveness, secondary meaning, or acquired distinctiveness with respect to

27  clothing to allow the Fender Trademarks to serve as a designator of clothing items sold

28

by Defendants and thus is incapable of functioning as a trademark with respect to clothing.

<u>Seventh Affirmative Defense – Bad Faith</u>

8.     Fender's claims were filed in bad faith and/or motived by improper purpose(s) to harm Defendants, its business, and its position in the marketplace and thus the Complaint constitutes a wrongful action.

<u>Eighth Affirmative Defense – No Damages or Other Losses</u>

9.     Each of the purported claims set forth in the Complaint is barred in whole or in part because Defendants' alleged conduct did not actually or proximately cause any of the losses or damages allegedly sustained by Fender.

<u>Ninth Affirmative Defense – No Willfulness</u>

10.     To the extent that Defendants' actions constitute a violation of a right owned by Fender, such actions were not willful, intentional, wanton, or otherwise wrongful.   As such, Defendants are not liable for exemplary or enhanced damages because neither Defendants nor any of its officers, directors, or managing agents acted intentionally, wantonly, or willfully to commit any infringing, unfair, tortious, or otherwise unlawful acts proscribed under federal law (the Lanham Act, 15 U.S.C. § 1051 *et seq.*) or state law as alleged in the Complaint.

<u>Tenth Affirmative Defense – No Bad Faith under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d))</u>

11.     Defendants are not liable for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Section 43(d) of the Lanham Act) ("ACPA") as alleged in the Complaint for want of bad faith intent to profit from any purported unauthorized use of the Fender Trademarks arising from Defendants' registration and/or use of the websites referenced by Fender in the Complaint.

/        /        /

/        /        /

/        /        /

Eleventh Affirmative Defense – No Registration, Trafficking In, or Use of a Domain Name Identical or Confusingly Similar to the Fender Trademarks under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d))

12.     Defendants are not liable for violation of the ACPA as alleged in complaint since Defendants has not registered, trafficked in, or used any domain name, including but not limited to the websites referenced by Fender in the Complaint, that is identical or confusingly similar to any of the Fender Trademarks.

Twelfth Affirmative Defense - Failure to Mitigate Damages

13.     To the extent Fender suffered any damages, which Defendants expressly deny, Fender has failed to take the steps necessary to mitigate any damages sustained.

Thirteenth Affirmative Defense - Unconscionability

14.     Defendants allege that Fender's claims set forth in the Complaint are barred in whole or in part because the Licensing Agreement and Guaranty asserted by Fender are void and unenforceable under the doctrines of substantive unconscionability and procedural unconscionability under applicable law.

**ADDITIONAL DEFENSES**

Defendants reserve the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action.

**COUNTERCLAIMS**

COMES NOW, Defendants/Counterclaimants Umerco Clothing Inc. dba Dragonfly Clothing, American Garmento Inc., Edward Kotab, Talal Kotab, and Foizie Kotab (collectively, "Defendants/Counterclaimants"), for their Counterclaims against Plaintiff Fender Musical Instruments Corp. ("Fender"), and state as follows:

**Parties, Jurisdiction, and Venue**

1.     Defendant/Counterclaimant Umerco Clothing Inc. dba Dragonfly Clothing ("Umerco") is a corporation incorporated under the laws of the State of California, with its principal place of business in Anaheim, Orange County, California.

2.     Defendant/Counterclaimant American Garmento Inc. ("American Garmento") is a corporation incorporated under the laws of the State of California, with its principal place of business in Anaheim, Orange County, California.

3.     Defendant/Counterclaimant Edward Kotab is an individual residing in Anaheim, Orange County, California.

4.     Defendant/Counterclaimant Talal Kotab is an individual residing in Anaheim, Orange County, California.

5.     Defendant/Counterclaimant Foizie Kotab is an individual residing in Anaheim, Orange County, California.  Foizie Kotab is the spouse of Talal Kotab.

6.     These Counterclaims arise out of Arizona common law and California common and statutory law.  Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) and Federal Rule of Civil Procedure 13.

7.     Moreover, this Court has personal jurisdiction over Fender because (i) it subjected itself to this Court's jurisdiction by commencing this action, (ii) it does business in and has a principal place of business in this District, (iii) their acts within this district have given rise to the claims brought herein.

8.     Venue is proper before this Court under 28 U.S.C. § 1391.

**Factual Allegations Concerning Fender's Performance of Its Obligations Under the Licensing Agreement and Guaranty**

9.     In or around July 2012 and before the parties entered into the License Agreement, Fender, through its Licensing Director Jeffrey Quinn, contacted Umerco, through Edward Kotab, and invited Umerco to enter into a license agreement with Fender whereby Umerco would be allowed to sell Fender-branded clothing items.

10.     As part of this invitation to enter into a license agreement regarding the sale of clothing, Fender, through its agent Jeffrey Quinn, invited Umerco, through Edward Kotab, to visit a Fender Visitor Center and Factory in Corona, California.

11.     In or around July 2012, Edward Kotab, on behalf of Umerco, agreed, and visited the Fender Visitor Center and Factory in Corona, CA on Fender's invitation,

17

proffered through its agent Jeffrey Quinn.

12.     During the visit, Fender, through its agent Jeffrey Quinn, touted the success of Fender's clothing licensees and represented to Umerco, through Edward Kotab, that Umerco would enjoy similar success in establishing a profitable income stream if they were to enter into a license agreement with Fender for the sale of Fender-branded clothing items.

13.     Fender, through its agent Jeffrey Quinn, described for Umerco, through Edward Kotab, the success of one of its clothing licensees, Defiance Corporation.

14.     Fender, through its agent Jeffery Quinn, described for Umerco, through Edward Kotab, how Defiance Corporation had earned $16 million in revenues and earned a net profit, after accounting for costs, of $9 million in only one calendar year from the sale of Fender-branded clothing items.

15.     The representations made by Jeffrey Quinn, as Fender's Licensing Director in the course of business on behalf of Fender, were made in the scope of his employment for Fender such that such representations are attributable to Fender equally as to Mr. Quinn personally.

16.     All such representations were made by Fender through its Licensing Director Jeffrey Quinn in California.

17.     Umerco, through Edward Kotab, believed that Jeffrey Quinn was authorized to make such representations by Fender.

18.     Umerco, through Edward Kotab, believed that these representations regarding the success of Fender's clothing licensing business for the licensees were true.

19.     Such representations were material to Umerco, through Edward Kotab, in determining if Umerco clothing should enter into a licensing agreement with Fender and were specifically considered and relied upon by Umerco in its consideration of a licensing agreement with Fender.

20.     In reasonable reliance on such representations, Umerco, through Edward

18

Kotab, entered into a License Agreement on September 6, 2012 (Doc. No. 1-1 Ex. B) with Fender whereby Umerco would become a licensee of Fender-branded clothing.

21.     All of the obligations of Umerco under the Licensing Agreement were to be performed in California, and Fender had knowledge thereof.

22.     Umerco, through Edward Kotab, relayed the representations of success made by Fender through its Licensing Director Quinn to Talal Kotab and Foizie Kotab, the spouse of Talal Kotab, who in turn reasonably relied on such representations in entering into a personal guaranty ("Guaranty") with Fender on September 6, 2012 (Doc. No. 1-1 at Ex. D).

23.     Moreover, Edward Kotab, with first-hand knowledge of the representations of success made by Fender through its Licensing Director Quinn, reasonably relied on such representation in entering into the Guaranty.

24.     However, unbeknownst to Umerco, Fender's representations made to Umerco, through Edward Kotab, concerning the success of Fender's clothing licensees in general and Defiance Corporation specifically were false.

25.     Specifically, Fender had knowledge at the time that such representations were made that the representations were false.

26.     Notwithstanding its knowledge at the time of such representations that they were false, Fender did not disclose the falsity of such representations to Umerco or Edward Kotab, Talal Kotab, or Foizie Kotab at any time, including before September 6, 2012, the date on which Umerco, through Edward Kotab, entered into the Licensing Agreement with Fender and on which Edward Kotab, Talal Kotab, and Foizie Kotab, by virtue of the spousal relationship with Talal Kotab, entered into the Guaranty with Fender.

27.     All of the obligations of Edward Kotab, Talal Kotab, and Foizie Kotab, by virtue of the spousal relationship with Talal Kotab, under the Guaranty were to be performed in California, and Fender had knowledge thereof.

28.     Moreover, Fender made such representations in an attempt to get Umerco,

through Edward Kotab, to reasonably rely on them and enter into the Licensing Agreement with Fender.

29.     Moreover, Fender made such representations in an attempt to get Edward Kotab, Talal Kotab, and Foizie Kotab, as spouse of Talal Kotab, to reasonably rely on them and enter into the Guaranty with Fender.

30.     Upon information and belief, Fender made such representations although it knew that clothing licensees, including Defiance Corporation, had not been successful or profitable in selling Fender-branded clothing, and in fact had suffered losses on such licensing agreements for want of a viable and profitable market for Fender-branded clothing for the licensees.

31.     Further, Fender, knowing that the success it represented to Umerco was false and thus nearly impossible, made such representations with an intention to cause Umerco damages and harm by requiring Umerco in the Licensing Agreement make a minimum royalty payment that Fender knew Umerco would not be able to pay under any circumstances.

32.     Further, Fender, knowing that the success it represented to Umerco was false and thus nearly impossible, made such representations with an intention to cause Edward Kotab, Talal Kotab, and Foizie Kotab, by virtue of the spousal relationship with Talal Kotab, damages and harm by requiring each of them to enter into the Guaranty to guarantee the minimum royalty payment that Fender knew Umerco would not be able to pay under any circumstances.

33.     Subsequently and during the course of its performance of the Licensing Agreement, Umerco was unable to earn a profit under the Licensing Agreement, resulting in financial losses with costs associated with its performance under the Licensing Agreement exceeding revenue and with revenue values far less than the minimum royalty payment.

34.     These losses were not the fault of any action or inaction taken by Umerco but rather were the result of the non-existence of any profitable market for Fender-

1    branded clothing under the Licensing Agreement which was known, but not disclosed,
2    by Fender beforehand.

3    35.     This pattern of losses far outstripping profits for Umerco under the
4    Licensing Agreement continued for American Garmento, to whom the Licensing
5    Agreement was assigned on September 12, 2013.

6    36.     At the time of the assignment to American Garmento, American
7    Garmento had knowledge of the representations of success made by Fender before
8    September 6, 2012 and which were reasonably relied upon by Umerco in entering into
9    the Licensing Agreement, but was unaware of the falsity of these material
10   representations.

11   37.     All of the obligations of American Garmento under the assignment of the
12   Licensing Agreement were to be performed in California, and Fender had knowledge
13   thereof.

14   38.     These losses suffered by American Garmento were not the fault of any
15   action or inaction taken by American Garmento but rather were the result of the non-
16   existence of any profitable market for Fender-branded clothing under the Licensing
17   Agreement, which was known, but not disclosed, by Fender beforehand.

18   39.     American Garmento, like Umerco, was unaware of the falsity of the
19   representations made by Fender, which were material to the decision of whether or not
20   to enter into an assignment of the Licensing Agreement with Fender, and which were
21   reasonably relied upon by American Garmento in entering into the assignment of the
22   Licensing Agreement.

23   40.     Further adding to the difficulties in obtaining a positive income stream
24   were the actions by Jeffrey Quinn, committed by him in the course of his employment
25   as Fender's Licensing Director, during the course of the Licensing Agreement in
26   making it nearly impossible to obtain Fender approval of offers for sale of Fender-
27   branded clothing, as required under the Licensing Agreement, without first providing a
28   gift demanded by Jeffrey Quinn which was not required under the Licensing Agreement

1    or Guaranty.

2       41.    Specifically, the Licensing Agreement required, in paragraph 9,

3    "Licensor's Approvals" before advertising, displaying, or offering for sale any Fender-

4    licensed products. These approvals would come from Jeff Quinn.

5       42.    During the term of the Licensing Agreement, Jeff Quinn, acting as

6    Fender's agent for Fender's performance under the Licensing Agreement, would

7    routinely ask for gifts from Umerco, Edward Kotab, or American Garmento as a

8    condition precedent to obtaining these "Licensor's Approvals." That is, in order to

9    obtain approvals to advertise the sale of Fender-licensed products for which Umerco

10    had up-fronted approximately $800,000, Fender, through Jeff Quinn, would routinely

11    demand, albeit in a friendly tone and with a friendly disposition, gifts which were not

12    required to be paid to Fender or Quinn under the Licensing Agreement.

13       43.    These gifts included a gold ring, a trip to California to attend an Ultimate

14    Fight Championship event, and tickets to a Phoenix musical concert.

15       44.    These gifts were improperly sought with no legitimate basis other than to

16    require the giving of such gifts as a condition precedent to Fender's approval for offers

17    for sale in a way to extract unwarranted benefits.

18    **COUNTERCLAIM ONE: BREACH OF THE COVENANT OF GOOD FAITH**

19    **AND FAIR DEALING UNDER ARIZONA LAW AS TO THE LICENSING**

20    **AGREEMENT**

21       45.    American Garmento and Umerco incorporate the foregoing paragraphs of

22    Defendants' Counterclaims as set forth herein.

23       46.    Fender materially breached, and is in material breach, of the covenant of

24    good faith and fair dealing arising out of the Licensing Agreement with American

25    Garmento and Umerco by demanding extra consideration, in the form of gifts for its

26    agent Quinn, not required under the Licensing Agreement as a condition precedent to

27    obtaining Licensor's Approvals for offers for sale by American Garmento or Umerco of

28    Fender-branded clothing.

47.     As a direct and proximate result of Fender's material breach of the covenant of good faith and fair dealing, American Garmento and Umerco have each sustained compensatory, general, special, consequential, incidental, and similar damages, in amounts to be proven at trial.

48.     Because this action arises out of a contract, express or implied, Umerco and American Garmento is each entitled to an award of attorney's fees against Fender in accordance with Ariz. Rev. Stat. Ann. § 12-341.01.

### COUNTERCLAIM TWO: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER ARIZONA LAW AS TO THE GUARANTY

49.     Edward Kotab and Talal Kotab and spouse Foizie Kotab incorporate the foregoing paragraphs of Defendants' Counterclaims as set forth herein.

50.     Fender materially breached, and is in material breach, of the covenant of good faith and fair dealing arising out of the Guaranty with Edward Kotab and Talal Kotab, whose spouse is Foizie Kotab, by demanding extra consideration, in the form of gifts for its agent Quinn, not required under the Licensing Agreement as a condition precedent to obtaining Licensor's Approvals for offers for sale by American Garmento or Umerco of Fender-branded clothing which would be required in order to sell any such clothing and obtain revenue from such sale so as to pay the minimum guaranteed royalties under the Licensing Agreement which were guaranteed by Edward Kotab, Talal Kotab, and Foizie Kotab, as the spouse of Talal Kotab, through the Guaranty.

51.     As a direct and proximate result of Fender's material breach of the covenant of good faith and fair dealing, Edward Kotab, Talal Kotab, and Foizie Kotab, as the spouse of Talal Kotab, have each sustained compensatory, general, special, consequential, incidental, and similar damages, in amounts to be proven at trial.

52.     Because this action arises out of a contract, express or implied, Edward Kotab, Talal Kotab, and Foizie Kotab, as the spouse of Talal Kotab, is each entitled to an award of attorney's fees against Fender in accordance with Ariz. Rev. Stat. Ann. § 12-341.01.

**COUNTERCLAIM THREE: FRAUD UNDER CALIFORNIA COMMON LAW**

53.    Defendants/Counterclaimants incorporate the foregoing paragraphs of Defendants' Counterclaims as set forth herein.

54.    Fender, through its Licensing Director Jeffrey Quinn, made false representations in the State of California (i) directly to Umerco; (ii) directly, through the assignment of the Licensing Agreement, to American Garmento; and (iii) indirectly to Edward Kotab individually, Talal Kotab, and Foizie Kotab by virtue of her spousal relationship with Talal Kotab, regarding the profitability and success of a licensing agreement with Fender concerning the sale of Fender-branded clothing.

55.    Such representations were material to each of the Defendants/Counterclaimants in that each or them considered such representations carefully in determining whether or not to enter into such a Licensing Agreement, in the case of Umerco; assignment of such Licensing Agreement in the case of American Garmento; or Guaranty in the case of Edward Kotab, Talal Kotab, and Foizie Kotab, by virtue of the spousal relationship with Talal Kotab, with Fender.

56.    Fender made such false, material representations with the knowledge that such representations were false, with knowledge that each of the Defendants/Counterclaimants believed such representations to be true.

57.    Fender made such false, material representations with the intent that each of the Defendants/Counterclaimants would reasonably rely on such representations in entering into the Licensing Agreement, in the case of American Garmento and Umerco, and Guaranty, in the case of Edward Kotab, Talal Kotab, and Foizie Kotab by virtue of the spousal relationship with Talal Kotab.

58.    Each of the Defendants and Counterclaimants rightfully relied upon the false, material representations in the specific manner that was reasonably contemplated by Fender.

59.    As a result of such reasonable reliance on false, material representations, each of Defendants/Counterclaimants have been damaged in an amount to be proven at

trial.

## COUNTERCLAIM FOUR: UNFAIR COMPETITION AND BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE 17200 *ET SEQ.*

60.     Defendants/Counterclaimants incorporate the foregoing paragraphs of Defendants/Counterclaimants' Counterclaims as set forth herein.

61.     Each of Defendants/Counterclaimants resides in California.

62.     Fender had knowledge, at the time of entering into the Licensing Agreement and Guaranty, that each of Defendants/Counterclaimants resides in California.

63.     Fender, both through the Licensing Agreement and Guaranty as well as other business of Fender outside the scope of such agreements, engages in business in the State of California.

64.     Section 17200 of the California Business and Professions Code prohibits acts or practices which are unlawful or fraudulent.

65.     Fender, by the actions of its agent and Licensing Director Jeffrey Quinn in making the extra-contractual requirement of providing Quinn with gifts as a condition precedent to obtaining Licensor's Approvals under the Licensing Agreement, has engaged in unlawful conduct in the State of California proscribed under Section 17200 of the California Business and Professions Code since the demanding of such gifts was not legally required under the Licensing Agreement and thus constituted a breach of the covenant of good faith and fair dealing between Umerco and American Garmento and Fender.

66.     Fender, by the actions of its agent and Licensing Director Jeffrey Quinn in making false, material representations with the intent that each of the Defendants/Counterclaimants would reasonably rely on such representations in entering into the Licensing Agreement, in the case of American Garmento and Umerco, and Guaranty, in the case of Edward Kotab, Talal Kotab, and Foizie Kotab, by virtue of the

spousal relationship with Talal Kotab, which resulted in reasonable reliance by each of Defendants/Counterclaimants causing each of them damages, engaged in deceitful and fraudulent conduct in the State of California proscribed under Section 17200 of the California Business and Professions Code since such actions amounted to common law fraud.

67.     As a result of such actions in violation of Section 17200 of California Business and Professions Code by Fender, Defendants/Counterclaimants are entitled to order of restitution, disgorgement, and/or equitable relief as this Court deems proper and allowed under California Business and Professions Code Section 17200, *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants/Counterclaimants American Garmento Inc., Umerco Inc., Edward Kotab, Talal Kotab, and Foizie Kotab, respectfully request that:

i.      Fender take nothing from Defendants/Counterclaimants by way of the Complaint and the Court dismiss the Complaint with prejudice;

ii.     Judgment on the Complaint be entered in favor of Defendants/Counterclaimants and against Fender;

iii.    Defendants/Counterclaimants be awarded their attorney's fees pursuant to A.R.S. § 12-341.01 and/or any other federal or state law to which they are entitled to compensation for reasonable attorney's fees;

iv.     Defendants/Counterclaimants be awarded all of their costs and expenses incurred in this action pursuant to A.R.S. § 12-341 and/or any other state or federal law to which they are entitled to compensation for costs and expenses;

v.      An order of this Court ordering restitution by Fender, disgorgement of monies by Fender associated with its unlawful and fraudulent conduct alleged herein, and any equitable relief that this Court deems proper under Cal. Bus. Prof. Code 17200 *et seq.*;

vi.   Awarding Defendants/Counterclaimants damages, in an amount to be proven at trial, for Fender's breach of the covenant of good faith and fair dealing as alleged herein;

vii.   Awarding Defendants/Counterclaimants damages, including but not limited to punitive damages, in an amount to be proven at trial, for Fender's fraud in violation of California common law as alleged herein; and

viii.   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants/Counterclaimants demand a trial by jury on all issues related to the claims in the Complaint and the counterclaims set forth herein which are triable to a jury.

Respectfully submitted this 4th of March, 2014.

WEISS & MOY, P.C.

s/Kenneth M. Motolenich-Salas
Kenneth M. Motolenich-Salas (ABN 027499)
kmotolenich@weissiplaw.com
Mark Weiss (ABN 013709)
mweiss@weissiplaw.com
4204 N. Brown Avenue
Scottsdale, Arizona 85251
Tel: (480) 994-8888
Fax: (480) 947-2663
*Attorneys for Defendants/Counterclaimants*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on March 4, 2014, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to all CM/ECF registrants of record in this matter.

5

6  By: s/Kenneth Motolenich-Salas

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28